IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROY S. RECLA,

|  |  |
|---|---|
|  | OPINION AND ORDER |
| Plaintiff, | 09-cv-101-bbc |
| v. | |
| MR. MARTINEZ, MS. HOLINKA and MR. ROBINSON, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights suit, plaintiff Roy Recla alleges that defendants Martinez, Holinka and Robinson placed him in segregation and then transferred him twice to higher security prisons because he refused to work under conditions that he believed would exacerbate his back and knee problems.   In the order screening the complaint, dkt. #15, I allowed plaintiff to proceed on two legal theories: (1) the transfers were disproportionate punishment, in violation of the Eighth Amendment; and (2) the transfers were retaliatory actions taken because plaintiff complained about his conditions of confinement, in violation of the First Amendment.

Now before the court is defendants' unopposed motion for summary judgment.  Dkt.

# 29.  In support of their motion, defendants allege that (1) plaintiff failed to exhaust his administrative remedies with respect defendant Holinka and with respect to a claim that he was transferred from the Federal Correctional Institution in Oxford, Wisconsin to the Federal Correctional Institution in Elkton, Ohio; (2) plaintiff failed to adequately allege in his complaint that defendant Holinka was personally involved in the decisions at issue in this case; and (3) plaintiff was not placed in segregation or transferred to punish him or retaliate against him.

Because plaintiff has failed to respond to defendants' motion, I must accept defendants' version of the facts as true.  Doe v. Cunningham, 30 F.3d 879, 883 (7th Cir. 1994). These facts show that defendants did not transfer plaintiff to retaliate against him or punish him.  Accordingly, defendants' motion for summary judgment must be granted.

From defendants' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Roy S. Recla is a prisoner in federal custody.  Defendant Martinez was the warden for the Federal Correctional Institution in Oxford, Wisconsin before October 2007. The institution includes a prison and a camp for lower security prisoners.  Defendant

Holinka became the warden of both the prison and the camp in October 2007.

Defendant Robinson has served as a unit manager at the prison since January 2008 and as a unit manager at the camp before that. Robinson's responsibilities as a unit manager included determining the security and custody level of inmates, making transfer recommendations and supervising case managers.

B.  Plaintiff's Reclassification

When plaintiff arrived in Oxford, Wisconsin on April 16, 2007, he was classified as a minimum security level inmate and assigned to the camp. However, he was placed in the Special Housing Unit because there was no available bed at the camp. (Although defendants do not say this explicitly in their proposed findings of fact, I will assume for the purpose of deciding this motion that the prisoners in the Special Housing Unit are housed in segregated confinement.) At that time, no medical restrictions had been placed on plaintiff limiting his ability to work at the prison. When space became available on April 30, 2007, plaintiff was moved from the Special Housing Unit to the camp.

Plaintiff's case manager was concerned about plaintiff's placement at the camp because of his criminal history, mental health status and current offense conduct as described in his presentence investigation report. According to the report, plaintiff had engaged in a domestic dispute in which he had pointed a gun and discharged it within a residence.

3

Despite the case manager's concerns, the chief psychologist determined that plaintiff's history did not warrant a higher security level placement at that time.

On May 23, 2007, the case manager received additional information that led her to believe that plaintiff was classified incorrectly. Plaintiff's counselor at the camp told the case manager that plaintiff refused to work or attend school. The clinical director informed the case manager that plaintiff became boisterous and aggressive during a medical examination that day. When the clinical director offered plaintiff additional medications for his chronic pain, plaintiff refused them. When the clinical director informed him that restrictions could be placed on his work assignment to accommodate his chronic pain, he refused and left the examination. From the information received from the counselor and clinical director, the case manager believed that plaintiff was exhibiting signs of poor institutional adjustment. Accordingly, the case manager initiated a request to transfer plaintiff from a "minimum" security facility to a "low" security facility.

The same day, an administrative detention order was issued, placing plaintiff in the Special Housing Unit pending reclassification. Two days later, the case manager completed her request for plaintiff's transfer to a low security level facility and Warden Martinez ordered the transfer. In June, plaintiff was placed in the general population at the prison.

On March 6, 2008, plaintiff was transferred from the prison in Oxford, Wisconsin to the prison in Elkton, Ohio because the Oxford prison became a Care Level One facility.

4

Inmates are placed in a facility that meets their medical needs; a Care Level Two facility provides more advanced healthcare than a Care Level One facility. Plaintiff was designated as a Care Level Two inmate and transferred to the Elkton prison to accommodate his medical needs.

### C.  Exhaustion of Administrative Remedies

Plaintiff has filed eighteen administrative remedy complaints with the Bureau of Prisons but completed the grievance process with respect to only three of the eighteen complaints. In two of those three grievances, plaintiff complained about medical care at the prison.

Plaintiff filed the third grievance on June 28, 2007. In his request for administrative remedy, plaintiff stated the following:

> While at the FPC-Oxford Camp, I was instructed by Unit Mgr. Robinson that if I did not do as I was told, regarding getting down on my hands and knees and [scrubbing] baseboards, that I would be put on the inside of the walls - FCI-Oxford. I instructed that I was not refusing any assigned work detail, but that I could only do so with the limits of my medical condition due to my 4 previous knee surgeries and major spinal disk injuries that prevented me from lifting/bending and kneeling for long periods, if at all, and to please assign me work that is within my limits. When advising BOP staff of my medical conditions, and filing a BP-8 with my camp counselor, I was removed from the camp and put in the hole. I was then reclassified and placed into the Oxford Medium-high facility two weeks later.

A warden investigated plaintiff's complaint but denied plaintiff's remedy request on

the ground that plaintiff did not have medical restrictions preventing him from fulfilling his work obligations and that plaintiff was transferred because of a classification error that plaintiff's case manager discovered.

Plaintiff filed an appeal on July 21, 2007, which the Regional Office denied.  The Regional Office determined that there was sufficient information in plaintiff's presentence investigation report to reclassify his custody scoring and place him in a low security prison. The Regional Director pointed out that the Clinical Director had reviewed plaintiff's outside medical records on August 21, 2007 and verified the plaintiff's medical restrictions.  Under these restrictions, plaintiff could not stand for longer than four hours, lift an amount greater than twenty pounds or participate in activity that involved bending.

Plaintiff filed a second appeal with the Central Office.  The Central Office confirmed the findings of the Regional Office and determined that plaintiff should be placed in a low security prison on the basis of his background and criminal convictions.

OPINION

A.  Exhaustion of Administrative Remedies

The 1996 Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." The Court of Appeals for the Seventh Circuit has held that "[e]xhaustion of administrative remedies, as required by 42 U.S.C. § 1997e, is a condition precedent to suit" and that district courts lack discretion to decide claims on the merits unless the exhaustion requirement has been satisfied. Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002); Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999).

"[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). The Bureau of Prisons' grievance procedures are set forth at 28 C.F.R. §§ 542.13-15. An inmate must present his concerns to staff first so that staff can try to resolve the issue informally. 28 C.F.R. § 542.13. If no informal resolution is reached, the inmate may file a BP-9 form with the warden. 28 C.F.R. § 542.14. If the inmate does not receive relief, the inmate must appeal first to the regional director and then to the central office. 28 C.F.R. § 542.15.

Defendants acknowledge that plaintiff completed the grievance process with respect to one administrative complaint that is related to this case. In that grievance, plaintiff alleged that he was "put in the hole" and then transferred out of the camp because he had refused to do work that would exacerbate his medical conditions. Defendants do not deny that plaintiff's grievance satisfied the exhaustion requirement with respect to defendants

Martinez and Robinson on his claims regarding his placement in segregation and his transfer

from the camp in Oxford to the prison.  However, defendants argue that plaintiff has not

exhausted his administrative remedies as to defendant Holinka and as to his transfer from

Wisconsin to Ohio because he did not mention either Holinka nor the interstate transfer in

the grievance.

Plaintiff's failure to identify defendant Holinka in a grievance is not fatal because

"nothing in [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549

U.S. 199, 217 (2007).  It is enough if the grievance "alerts the prison to the nature of the

wrong for which redress is sought."  Strong v. David, 297 F.3d 646, 650 (7th Cir.2002)

Although individual prisons are entitled to impose their own content requirements for

grievances, Jones, 549 U.S. at 923, defendants do not point to a rule of the Bureau of

Prisons that would have required plaintiff to name Holinka in his grievance.  An argument

that Holinka was not involved in the decisions at issue is an argument about the merits, not

about exhaustion.

Defendants' second argument is that plaintiff did not exhaust his claims as they relate

to a transfer from Wisconsin to Ohio because his grievance does not discuss that transfer.

In fact, plaintiff could not have discussed that transfer in his grievance because he filed it in

2007 and he was not transferred to Ohio until 2008.  This argument raises a closer question.

However, in previous cases, I have concluded that § 1997e(a) does not require prisoners to

8

file a new grievance each time a new instance of the same alleged conduct occurs. <u>E.g.</u>, <u>Freeman v. Berge</u>, 2004 WL 1774737, *5 (W.D. Wis. 2004) (multiple instances of food deprivation). <u>See also</u> <u>Johnson v. Johnson</u>, 385 F.3d 503, 521 (5th Cir. 2004) (concluding that prisoner satisfied exhaustion requirements with first grievance about alleged failure to protect him from sexual assaults; prisoner was not required to file new grievance with each new sexual assault because "prisoners need not continue to file grievances about the same issue"). This case is similar because plaintiff is alleging that the transfer to Ohio is a continuation of the same course of conduct he complained about in his grievance. Accordingly, I conclude that defendants have not shown as a matter of law that any of plaintiff's claims should be dismissed for failing to comply with § 1997e(a).

### B.  <u>Eighth Amendment and Retaliation Claims</u>

Plaintiff's claims arise from one set of facts, but I allowed him to proceed on two legal theories. In his complaint, he alleged that defendants placed him segregation and then transferred him to higher security institutions because he complained that he was unable to perform certain work as a result of medical limitations. I concluded that plaintiff's allegations could be construed as a claim of disproportionate punishment under the Eighth Amendment or as a claim of retaliation under the First Amendment.

With respect to the Eighth Amendment theory, the United States Supreme Court and

the Court of Appeals for the Seventh Circuit have recognized that "forms of punishment that are permitted for serious crimes may violate the clause if imposed for trivial ones." Pearson v. Ramos, 237 F.3d 881, 885 (7th Cir. 2001) (citing Solem v. Helm, 463 U.S. 277 (1983); Rice v. Cooper, 148 F.3d 747, 752 (7th Cir. 1998); Leslie v. Doyle, 125 F.3d 1132, 1135 (7th Cir. 1997); United States v. Saccoccia, 58 F.3d 754, 787-89 (1st Cir. 1995)). Although this "norm of proportionality" is usually discussed in context of sentencing for a criminal conviction, in Pearson, 237 F.3d at 885, the court stated that it could apply to prison discipline. With respect to plaintiff's retaliation claim, the court of appeals has held that prison officials may not discipline a prisoner or take other adverse action against him because he complained about his prison conditions. E.g., Bridges v. Gilbert, 557 F.3d 541, 551 (7th Cir. 2009).

Both of these legal theories require proof of a particular intent. Although the scope of the proportionality principle in the disciplinary context is not clear, a prison official's actions cannot be described as disproportionate "punishment" unless there is proof that the action had a punitive purpose. Cf. Wilson v. Seiter, 501 U.S. 294, 299-300 (1991) (Eighth Amendment "mandate[s] inquiry into a prison official's state of mind" because word "punishment" in Amendment implies "intent requirement"). Similarly, the First Amendment claim requires proof that plaintiff's protected speech motivated defendants to treat him less favorably. Johnson v. Kingston, 292 F. Supp. 2d 1146, 1153 (W.D. Wis.

2003).

In this case, defendants deny that plaintiff was placed in segregation or transferred to a different prison in order to punish him or retaliate against him for exercising his right to free speech.  Rather, defendants say that plaintiff was placed in the special housing unit and then moved to the prison at Oxford because he had been classified incorrectly.  Further, they say, he was transferred to the Elkton prison to provide him better medical care. Because plaintiff has not disputed defendant's evidence, I must accept it as true and grant defendants' motion for summary judgment.  Further, because I have concluded that each of the defendants is entitled to judgment as a matter of law for other reasons, I need not address defendants' argument that the complaint should be dismissed as to defendant Holinka because plaintiff failed to allege sufficient facts in his complaint to show that Holinka was personally involved in any of the decisions at issue in this case.


ORDER

IT IS ORDERED that

(1)    The motion for summary judgment filed by defendants Martinez, Holinka and Robinson, dkt. #29, is GRANTED.

(2)    The clerk of court is directed to enter judgment for defendants and close this

11

case.

Entered this 25th day of June, 2010.

<div style="margin-left: 45%;">

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

</div>